May it please the Court, Henry Weissman for Appellant Verizon California. I would like to reserve five minutes for rebuttal. Verizon's claim is ripe because the California Commission's rates have been in effect since they were adopted nearly two years ago and remain in effect today. As this Court held in AT&T v. Pacific Bell, the proper time for a party to obtain judicial review of an order under the Telecommunications Act of 1996 is when the State Commission makes an operational or binding decision, which the California Commission unquestionably has done here. Moreover, Verizon California suffers immediate hardship from deferred review of the Commission's rates in the form of lost customers, hardship that the reason this case is important. Is that the only hardship you're suffering? The lost customers is the most acute form of hardship, Your Honor, yes. What evidence did you present that you were losing customers? Your Honor, we did not present evidence, and the reason is that we were the moving party on summary judgment. The ripeness issue was raised by our opponents in opposition to our motion for summary judgment. At that stage of the case, the allegation in the complaint, paragraph 44, that the rate order was causing us to lose customers and that the true-up would not be effective must be accepted as true. And if there were a dispute about that issue, then we were entitled to present evidence, and the District Court's sua sponte entry of a judgment of dismissal without a cross-motion was clear error. But didn't Judge Henderson invite you to file a response? No, sir. Judge Henderson, after entering sua sponte dismissal on the claims that were the subject of our motion for summary judgment, then asked a very narrow and limited question, that is, whether his reasoning on ripeness would apply equally to the two claims that were not the subject of our motion for summary judgment. And we said, we don't agree with your ripeness ruling. However, we don't see any basis for distinguishing that ruling as to these three claims versus the other two claims. We were never given an opportunity to present evidence as we specifically requested in our reply in support of our motion for summary judgment to establish the harms that we clearly alleged in the complaint. In essence, your claim is that the ripeness issue is a 12B1 if you go into the subject matter jurisdiction of the court, and that is tested by the pleadings and not by any evidence. That is correct, your Honor. And we would invite the court's attention specifically to the Supreme Court's opinion in the toilet goods case, 387 U.S. 167 at 172, where the court made clear that the courts must accept allegations of the complaint regarding hardship in determining ripeness. These and two other cases are discussed at page 35 of our opening brief. Your Honors, the reason this case is important to Verizon, and we would respectfully submit that it should be important to this court, is that the district court's ripeness ruling would eviscerate judicial review and would give agencies the final word on whether their actions comply with the law. If our opponents were right and effective rates can never be reviewed as long as they are called interim, then state commissions would have carte blanche to set rates in whatever way pleases them in contravention of federal law. The only way to prevent that is through judicial review to ensure that an agency acts within the limits of its delegated authority. Now, with the court's permission, I would like to address head-on the U.S. West against MFS case, upon which our opponents place principal reliance. And that case is inapplicable here for three principal reasons. Number one, there was no claim of hardship in U.S. West. U.S. West did not contend that deferred review would cause it to suffer hardship. On the contrary, U.S. West admitted that a true-up would fully address the harms that it was claiming in that case. And it said, quote, it would not object to deferred review, end quote. That admission was the linchpin of the court's holding, both with respect to hardship and also with respect to the fitness of the particular claims that U.S. West was alleging in that case. Verizon, however, contends that it suffers hardship from deferred review, including customer loss, that will not be cured by a true-up. As we've discussed, that allegation, which was clearly made in paragraph 44 of the complaint, must be accepted as true at this stage of the proceedings and makes this case fundamentally different from U.S. West. No, no. Can't you, at the true-up, show what damages you suffered from loss of customers and have the true-up rates increased to cover them? Excellent question, Your Honor. Thank you very much. First of all, the true-up is limited. The CPUC has said the only thing the true-up will cover is the difference between the permanent rates, when they're eventually set, and the interim rates. It is not intended to provide compensation for all of the other harms that we suffer. For example, it's going to cost variety these customers are not automatically going to come back to us when these rates are changed, these wholesale rates are changed. We also need to spend money to market to these customers to get them back. That is not part of the true-up. Moreover, there's a difference between the wholesale rates. The true-up is only the difference between the new wholesale rates and the old interim wholesale rates. There's yet another difference between those wholesale rates and the retail rates that Verizon would otherwise charge its customers. And that margin is not made up for by the true-up. But the key point, Your Honor, is that at this stage of the case, in which we are testing the pleadings, we have specifically alleged the true-up will not be adequate to cure our harm, and that allegation must be accepted as true. Second, I don't quite understand, and perhaps I'm just missing something. Why can you get summary judgment on the basis of allegations? Our motion for summary judgment was not directed to rightness. If our summary judgment motion was not well taken, Your Honor, if we fail to present evidence sufficient to justify a judgment, then the proper remedy for the district court was to deny our motion, not to enter judgment for the defendants. That was the problem. The court took an extra step in sua sponsa, entering judgment for the other side, without allowing us to present evidence that would oppose the theory that they are now asserting we failed to present evidence on. The second, pardon me. Go ahead. You have a second reason why U.S. West is distinguishable? Yes, thank you, Your Honor. The expansive reading of U.S. West suggested by our opponents would conflict with this Court's more recent decision in AT&T against Pacific Bell, which says that the proper time for judicial review of action taken under the 96 Act is when the agency has made an operational and binding decision. AT&T concluded that you don't have to go through the further administrative process of an application for rehearing before obtaining judicial review. So, too, Verizon does not need to go through an even lengthier administrative process, namely the setting of interim rates, sorry, permanent rates, before obtaining review of the commission's operational and binding rates. The commission, pardon me. But won't the permanent rates take into consideration the period of time that the interim rates have been in effect and award an amount to compensate you for what the permanent rates should have been but were not when the interim rates were adopted? Yes, sir. The stated intent of the commission is to set the permits to, once they set the permanent rates, to retroactively apply those rates. So the intent is to establish a true-up that makes up the difference between the old wholesale rates and the new wholesale rates. And we're saying that promise, even if they follow through on it, which, by the way, they can always change their mind and the commission can change its mind and not adopt a true-up, but assuming that they do, we say that make-up payment, that true-up payment will not fully cure all the harms that we are suffering. Mr. Weissman, there's another element here that struck me perhaps a little bit because of today's headline in the Wall Street Journal regarding WorldCom. WorldCom owns MCI and is one of the parties here. Yes. What guarantees that you will be paid the difference after the true-up? Isn't there a risk of creditworthiness? Yes, sir. And we specifically allege that in paragraph 44 of the complaint ER page 16. Now, let me ask a second question. Creditworthiness can be hedged by the purchase of credit insurance in the market. Can you recover the cost of the insurance in your true-up? There's no provision for that in the commission's order. The true-up only covers the difference between the permanent rates and the interim rates. So therefore, there are two elements here that will not be covered according to your argument in the true-up. One is the loss of customers, a difficult issue to prove, but nonetheless, you have the burden of proof on that, so that's your problem. And second, the cost of creditworthiness or credit insurance, because who knows if after the permanent order is entered, the person who is to pay that increased rate, if it is to be increased, will be in business or will be in bankruptcy. Absolutely, Your Honor. Absolutely. So to return to you... I'd like to return for a moment to the question of what you were asked to, invited to respond. I see at 260 that, in the record, that it was on the three other claims. Wouldn't you have been able to raise this higher point on the three other claims? No, because there was two other claims, and the order, the sole thing that the order asked us, that the district court... Three claims. Yeah, maybe I'm wrong. The sole thing that the district court asked is, tell me if there's any difference between my reasoning as to the claims that were... He may have said that, but wasn't that a point where you could have said, but you're giving a judgment that you shouldn't give, and said, we give up. Follow what you were doing then. If you had a lot to show on hardship, why didn't you say, yes, Judge, we'll show you it's a terrible hardship? He didn't ask us that question, Your Honor. No, he didn't. He asked you to respond. He asked us whether, not just to respond, with all due respect, but he asked us whether there was any difference between his analysis as it applied to those three claims versus how it would have applied to the other two claims. And we felt it would not have been candid with the court to claim that there was such a difference. You were very... I would say it was very deferential to the court. You didn't take the opportunity. And I really want... You make so much of it now. It would seem to me if you had a lot of evidence of losing customers, you would have been anxious to produce it. We were anxious to produce it, and in the reply brief in support of summary judgment, we specifically requested the opportunity to present that evidence. The district court did not consider that, or at least did not discuss it, and instead, sua sponte entered judgment. The fact that we were prepared to present such evidence, I think, must be taken as true. And, indeed, we were prepared to present evidence. I might say to the court that there's really no dispute in this case that the rate order is causing us to lose customers. That is the whole purpose of lowering rates. So in itself, that's not a big deal. I mean, the question is how much it's... I mean, the whole idea was to introduce competition into this market. So I think we would need some sense of how much you're being heard. Well, Your Honor, we would say, first of all, as to the competition point, if I might say, the competition that is the contemplation of the Act is competition on the basis of rates that are based on costs. And we allege they are not based on costs. That allegation must be accepted as true for purposes of determining ripeness, because rip... Yes, but subsidized competition, no. Precisely, Your Honor. The magnitude of the customer loss, while relevant, is not dispositive. Even if we're only losing a very small number of customers, any customers that we lose constitutes hardship. And we would invite the Court's attention to the Midcoast case from the D.C. Circuit cited at page 31 of our opening brief, which makes it very clear that if you have a rate, even if it's an interim rate that is subject to refund, as it was in Midcoast, and that rate causes you to lose a customer, even for an interim period of time, that is the kind of hardship that justifies immediate judicial review, notwithstanding a claim that it's not ripe. Now... But when do you... Do you have any expectation as to when the final rates will be established? Yes, we have some, Your Honor, although this is not in the record. But I The most recent scheduling order from the Administrative Law Judge states that the decision, assuming that no hearings were held in the administrative process, the decision would be expected late summer of this year. However, notice if the decision is made to hold a hearing, and that's something that will be decided later on in the spring, then the expectation is that these rates may not be put into place until much later in this year, perhaps even next year. And as the Court is aware, these rates have already been into effect for two years, nearly, and there's no time limit within which the Commission must act. If I could make one other point about U.S. West, which I think is quite important, and I see my time is running down. We said there was no allegation of hardship. We said it conflicts with AT&T. But the third point, critical point, is that there's no limiting principle. Our opponents' suggestion that U.S. West establishes a categorical rule that interim rate orders are never right would eviscerate judicial review. As we pointed out, this would mean that an agency could set rates by spinning a roulette wheel and thwart the enforcement of federal laws. As long as they call them interim and make them subject to a trial. Well, even though those reductio ad absurdum don't make very much impression on courts, no, they can at some point cut in and say no. I appreciate logic. We'll cut it off. I appreciate that, Your Honor, but I think it's incumbent on our opponents to articulate a limiting principle that would prevent these absurd results. We say U.S. West must be read in light of the facts of that case and the allegations of that case. And if it's read categorically, as they suggest, these absurd results would ensue. And those would be damaging not only to incumbents like Verizon, which, as I say, is concerned about this case because of the precedent that potentially sets that could give other state commissions the ability to violate the law, but also it would, thank you, Your Honor, it would also, if an agency could avoid judicial review of rates just by calling them interim, then there's a whole variety of other actions that other government agencies could take that likewise would be immunized from review. Just to give one example, the Office of Thrift Supervision could set interim capital standards for banks that prohibit inclusion of goodwill, contrary to Federal law, but promise to adopt permanent standards that it intends to apply retroactively. This is not and has never been the law. Agency actions that command compliance on pain of sanction and that cause immediate hardship are right for review, regardless of the agency's promise to reconsider its decision in the future. That is this case. Thank you. We have three minutes left. May it please the Court, Daniel Mack, arguing on behalf of Apelli's MCI and AT&T. With me at counsel table are Kimberly Lippe from the California Public Utilities Commission and Randolph Deutsch from AT&T, representing AT&T. I plan to argue for the bulk of all of Apelli's time this is Lippe, who will argue on behalf of the California PUC. This case is directly controlled by the Court's decision in U.S. West, which conclusively held that interim rates under the Telecom Act that are subject to a true-up are not right for review. The District Court's decision to decline premature review was fully consistent with U.S. West and basic principles of rightness. Rightness and you say about Mr. Weissman's point that in U.S. West, it was admitted by U.S. West that a true-up hearing would provide the vehicle for any damages which it might have suffered during the interim period, but that here the loss of customers is not a compensable item in the true-up, as is either the risk of credit and credit risk of AT&T, with all respect, and WorldCom, with probably less respect. How do you fit those facts into your citation of U.S. West? Well, there are only a few minor differences between this case and U.S. West, and I would Yeah, well, one's a stipulation and the other is not. And one other one, and I will address your question because that obviously is the crux of the issue here, but one other distinction between the two cases that is worth noting actually makes this case a stronger case for finding of unripeness, and that is that in this case, the true-up is a certainty, whereas in U.S. West, that was something that was up in the air. The Court noted that there was a mere possibility of a true-up, but as to the question of how does the concession by U.S. West and the lack of a concession by Verizon affect the analysis, that is a difference, but we believe it is not a material difference for a number of reasons. First of all, as a legal matter, there is no hardship here, regardless of Verizon's speculative assertions. This Court has repeatedly made clear that to establish the hardship requirement for ripeness, a litigant must show that not only will it suffer direct and immediate hardship, but also that that hardship would entail more than possible financial loss. Strict of Verizon's unsupported hypothetical speculation about potential and irreparable customer loss, that is all that Verizon's claims amount to here. That's all they have to claim in a pleading where it is a complaint and you're ruling on a 12b1 basis, isn't it? That's only correct to assert outrageous allegations of hardship, and for the purpose of determining whether they're right, isn't the district court bound by the allegations under the idea of the 12b1 by 12b6, you look at the complaint, the face of the complaint? To the extent the district court is bound by allegations, it is bound in this case by the allegation that the rates are unlawful, and for purposes of a ripeness analysis, the district court is bound by the allegations that there is actual, immediate, and present hardship. It's certainly not bound by the allegation unsupported that the hardship that is being suffered here is irremediable, that will not be remedied. But how do you have to, how should one support an allegation in a complaint? Are you saying that they have to plead evidentiary facts? Well, this court has on numerous occasions noted that a district court's factual findings on jurisdictional issues must be accepted unless clearly erroneous. We submit that the district court in this case made such factual findings. It found that Verizon's claims were nothing but speculation. For example, in the Winter case, cited in our brief, Winter v. California Medical Review, that was a ripeness case on a motion to dismiss, and in that case, this court repeated what it has said over and over again, which is district courts' factual findings on jurisdictional issues have to be accepted unless clearly erroneous. If Verizon's view of what allegations need to be accepted for purposes of establishing ripeness were accepted, then any litigant at any point... But what were exactly the allegations of financial hardship? They were incredibly limited and cursory, Your Honor, and they're in Excerpt from Record 16 in paragraph 44. They basically say, quote, even assuming that a And then as to irreparability, they say this harm cannot be cured by the prospect of a future true-up of the Commission's erroneous rates. And that's vague? I mean, isn't that exactly what Mr. Wesson was saying here a moment ago? That is what he was saying. Do you want an affidavit by world-famous expert Emil Wombat saying that? The key flaw in these allegations, in addition to the fact that there's no support for them factually, is that they're illogical. It is illogical to assume that customers will switch to Verizon's competitors once rates are low, once those competitors offer low rates, and then once after the true-up, when rates rise to their natural level, that those competitors will not switch again. Effectively, Verizon's theory is that customers will make a one-time, one-way switch. That's a matter of proof, isn't it? It's a difficult matter of proof, but it's a matter of proof. Yes, which Verizon failed to... Well, but Verizon wasn't given a chance to prove it because there was a motion under 12b1 to strike the complaint on the basis of ripeness. Verizon could have submitted that proof in a number of ways. It could have offered such proof on its... On 12b1 motion? It's required to offer proof? Verizon was well aware that it needed to establish ripeness in this case. To blame the district court for failing to ask Verizon to provide evidence in support of that, I think, shifts the burden away from Verizon and, in fact, the district court. I'm treating it as a pleading matter. The question is, are the allegations deemed to be true for the purpose of 12b1, 12b6, sufficient legally? Not when those allegations address hypothetical claims of irreparability. In a number of cases, this court has, on motions to dismiss, found cases unripe. For example, in the Winter case, municipality of Anchorage case, another case cited in our brief, was also on a motion to dismiss and also contained a finding that the case was unripe. As did the Portman case, Portman v. County of Santa Clara. There, there was conjectural allegation about harm, and the court did not accept that mere allegation. If Verizon's theory of what the court needs to accept were true, every case would be ripe merely on the assertion in a complaint, we are suffering harm and that harm will not be remedied. The court can look into the reasoning behind... Further here, they said we're suffering harm because we're losing clients to subsidized carriers. They claim subsidized carriers, and we won't be able to get them back once they've left. That's been our experience, right? Well, the experience part was not in there, and, in fact, there is no experience to suggest that, and there's no reason to believe that. Once a customer goes out the door, he doesn't come back if he switched from us. Right. Customers will switch once, but not twice. They will definitely switch once and definitely not switch twice. That is the theory underlying their claim of harm. That's the allegation, right? And the court need not accept that allegation. In the Gardner case... Did the court, in rejecting that allegation, find specifically that it was conjectural and there was no basis in logic or reason to believe that to be true? Yes. Yes, the court did. Yes, and that was explicitly stated in the district court's decision. And as this court has said over and over, including on motions to dismiss, a district court's factual findings on jurisdictional issues will be accepted unless they're clearly erroneous. And not only are those findings not clearly erroneous, but they are fully consistent with logic. Logic suggests that if customers will switch, they will continue to switch, and there's been no support for any of that. The Gardner v. Toilet Goods case that Verizon relies on discussed what allegations of hardship were accepted, but there the key distinction was that the allegations of hardship were concrete steps that need to be taken in order to comply with the challenge regulation. In that case, was there any finding by the U.S. District Court as to the damage which Verizon claims because of the lack of credit insurance or credit worthiness? No, and in fact, Verizon made no such arguments with any specificity whatsoever, and that is now being raised here as an additional point of hypothetical conjecture. But again, in the Gardner case, that Supreme Court case, there were a number of steps that needed to be taken to comply with the regulations. Certain goods had to be registered. The company had to purchase new equipment, had to perform scientific testing, had to engage in substantial record keeping. The only open question was how much all of that would cost. What was not an open question was whether those steps would need to be taken. The steps that Verizon needs to take here are none. Verizon indisputably has to offer these network elements to its competitors at some price. The only question is at what price. And so they don't need to alter their behavior at all in order to do that. Again, the accepting Verizon's rule as true that one must accept all allegations would call into question any case in which this court or any other court has found harm, claimed harm to be speculative. And there is simply no reason to depart from the general rule that the burden of establishing jurisdiction is on Verizon and that they failed to meet that burden as the district court found. Now, I want to make one point about this blaming the district court for failing to ask Verizon to submit additional evidence. Verizon could have done that from moment one. It could have attempted to do it in its reply brief. And Verizon is well aware that in cases under section 252 of the act, the typical course is that summary judgment for one party, denial of summary judgment for one party is a grant of summary judgment for another. These are cases that typically arise in the context of closed administrative proceedings. And Verizon is well aware of that. The idea that they were caught. The judge Henderson didn't grant cross motion of summary judgment to you, did he? No, it wasn't a cross motion. But again, in these cases, whether or not there are cross motions, it is often the case that denial of summary judgment for one, because these are effectively reviews on a closed administrative record. And as Judge Noonan pointed out, Verizon also, even after the fact, could have attempted to do so, could have attempted to support its allegations of harm with some sort of evidence. But the district court made its findings. If Verizon failed to submit evidence to support its hypothetical and illogical claims of irreparable harm, that is on Verizon. It's certainly not on the district court for failing to ask for it. You want to save some time for your colleagues? Yes. A couple more points. Regarding the Pacific Bell versus AT&T case, that was a case about finality. And Verizon is not claiming in any way that the finality analysis, comparing this case to U.S. West, is at all different. The only distinction that Verizon is raising is between the concession of irreparable harm. And so U.S. West made very clear that an interim rate subject to a true-up, in that case only possibly subject to a true-up, in this case definitely subject to a true-up, is not final, does not meet the first prong of the ripeness analysis, let alone the second. And of course, Pacific Bell can't overrule U.S. West on that point and did not purport to. In fact, cited U.S. West for a simple proposition and said nothing about how it would affect U.S. West because, of course, it does not. Secondly, in the Pacific Bell case, there were permanent rates there that were closed to administrative review. Sure, there was the possibility under state law of filing a request for reconsideration, but as is clear in the Pacific Bell case, that case was closed, the rates challenged were closed for administrative review is indisputably not the case here. In fact, there's an ongoing permanent proceeding which will correct any harm and will correct any harm relatively soon. So I will leave my remaining time to my colleague. I just wanted to conclude generally by saying that the district court made factual findings in this case. Whether those findings were made absent and sufficient submissions by Verizon is something that is on Verizon. And this court has made clear that a district court's jurisdictional factual findings will not be overturned unless clearly erroneous. And because of U.S. West and because of sound basic rightness principles, we urge the court to affirm the district court. Okay. Please, the court. My name is Kim Lippy. I'm the attorney for the California Public Utilities Commission. We agree with counsel's arguments regarding rightness issue in this case and think that it should be dismissed under U.S. West. Our main concern here is that Verizon's position in this case would basically eliminate an important tool that the commission has in establishing interim rates, especially in a case as this where the commission found Verizon's then current rates to be unreasonably high and not forward-looking, not in compliance with the act at all. Verizon's position in this case would basically require us to go through a full-blown cost proceeding analysis before we can set any kind of interim rates and give relief to the parties. We don't think that, as we've explained in our briefs, that that's what federal law requires. But how do you provide for a ready pot of money out of which Verizon, if it proved that it suffered damages which could not be compensated in the true of it, can go to to get damages? I don't know that I believe if Verizon does have such damages, it certainly could have come to the commission and to the district court and asked for a stay of the commission's decision. It could have presented evidence at that point before the commission, before it even went to court. It never did that. It never provided any information or evidence to the commission that it would lose customers or that it would otherwise suffer irreparable harm, which is something that the commission would look at if Verizon had asked for a stay. And Verizon certainly may come to the commission and try to recoup those costs. And I think that Verizon... Who would they recoup the costs against, not the commission? Well, the commission... No, not against the commission. No, it would have to be against the commission. Would you add, as an element of the permanent rates, the economic damage suffered by Verizon through the loss of its customers, if that were proven? I don't believe that federal law, that what the elements that TELRIC requires would allow us to include those costs in the permanent rates. Whether or not it was brought up in the district court, what about the costs of credit insurance or the risk of credit worthiness? Could that be added? I'm not prepared to say at this time that it could be added. So the question remains, if those are uncompensatable elements of damage through the true of, what mechanism does Verizon have to recover them? I don't know that Verizon... I don't believe that it's a harm that Verizon has a cognizable action before this court or before the commission to recover those costs. It certainly can maybe recoup those costs in its rates somehow with its customers. So your answer would be you don't know? I don't know. I don't know. How long have the interim rates been in effect now? The interim rates have been in effect since, I believe, March of 2003, which is when the commission's decision setting the interim rates went into effect. And I should also add that tomorrow on the commission's agenda, at its meeting tomorrow, there is a decision on the agenda where the commission is going to revise these interim rates in response to pleadings that Verizon has filed. So these rates are going to be subject to change. And I also want to address Verizon's frequent statements that it's uncertain as to when the commission is going to schedule out where the proposed decision is expected in June of this year if there are no hearings required. And any delay in this proceeding has not been due to lack of diligence on the commission's part. Verizon itself, jointly and by itself, has asked for several extensions in this case to make filings. They originally filed their 2004. They've now asked the commission to file an additional round of comments. So any pushback in the date that the commission expects a final decision has not been to the commission's delay. It's been to the party's own making. Well, there's some point to their contention that an agency could avoid review by always calling it interim and never deciding. Do you think we should set a cutoff so that? Well, in U.S. West, the Ninth Circuit decided that the rates were not reviewable, they were not ripe, even though it was uncertain whether the commission was going to issue a true-up or not. So there was just no, there was an uncertainty there. Here, it is very certain. The commission is undergoing proceedings right now. It is going to issue a true-up. Just last October, we issued a permanent decision in SBC California's case, and we set a 90-day limit to doing the true-up procedure. That decision is on the commission's agenda for the end of this month. So it's a very simple process. It's a very quick, straightforward process. It is in motion. It's not something that's indefinite. And I would also say that as to Verizon's claims that there's no limit or there's no limiting principle as to U.S. West, I would disagree. Even the district court said that we don't need to look at a case, for example, where the rates on their face are unreasonable, as in Verizon's example of the one-cent rate, or their example that we're just spinning a roulette wheel. We don't agree that even in U.S. West that there's absolutely no limiting principle here at all. And in fact, if you look at the rates the commission has set, they are very much in line with what's going on in the rest of the country. The rates are slightly... What is the limiting principle? That I think, first of all, that in this case, it's that the permanent rates are underway. There's a definite schedule in place. And secondly, the court said, the district court pointed and said, there's no need to look, for example, at a case where the rates on their face are just patently unreasonable. Neither one of those sounds to me like a principle. They're just facts. Okay. Well, I suppose there's no articulated principle there. But I think if you do look at the facts of this case, that it does fall squarely within the limits of U.S. West. And these rates are not ripe. And we would also object to going back to district court to have this piecemeal review of rates that are interim and that are subject to change, possibly tomorrow, and that are going to be replaced. They are going to be replaced probably within this year. And no longer... You keep talking about what's going to happen tomorrow and what's come out in new amended schedules. This is an appellate court. Are you asking us to take evidence at this time and a judicial notice of these administrative actions? How do we get to consider that aspect of your argument? No, actually. But I believe there was a judicial notice requested by Verizon of the schedule that's currently in place as far as the commission issuing its decision in this summer. How does this court take current information if we're reviewing what the trial judge did? I'm sorry? How can this court take judicial notice of what has happened after the action by the district judge? We're not a trial court. We're a review court. I just want to know how we get there from there. Right. Well, we could submit the schedule to you if you wanted, Your Honor. But otherwise, I don't think that that's... Suggesting that's exactly what you can't do because that's all new information. I don't see how an appellate court can say, well, now we have this new information that was not before the district court and therefore we're going to base our decision because these things aren't permanent. They are changeable and so forth. I don't believe that this court needs to even consider either the current... What I've just said about the current schedule or the fact that the commission is going to vote tomorrow to change Verizon's rates. I think that it can base its decision as the district court did on the fact that the permanent proceeding is underway, that the commission does have a schedule in place to set these rates. It's not an indefinite procedure and that there is a true-up scheduled in this case, a definite true-up. It's not even, I guess, as it was in U.S. West. So unless the court has any further questions, that's all. No further questions. Thank you. Mr. Weisman, you have four minutes. Thank you, Your Honor. First, Your Honor, in this case, the harm that Verizon suffers is immediate and clear. These rates are in effect and have been in effect for two years. We are bound to offer our network at these prices. That is causing a loss of customers. That is not disputed. The immediacy of the harm here distinguishes this case from the cases upon which our opponents rely where the allegation was that harm might occur in the future. That's different. The harm is occurring now. That's clear. The issue is whether the future action that the commission promises to take to revise those rates would cure the harm that we are currently suffering. That is a very different kind of a case. Now, I might say that the bankruptcy risk, which you have so cogently mentioned, Judge Bea, was not only alleged in paragraph 44 of the complaint, the portion that was not read to you by our opposing counsel, but was also raised in the district court in the summary judgment motion at ER page 215. The key point is that once we have alleged hardship in the form of lost customers, which we clearly did, it was not Verizon's burden to prove that the remedy that was being promised would not be fully effective in curing our harm. That was their burden to prove that the remedy that they were offering up would be fully effective. If there's any uncertainty about the adequacy of a subsequent remedy, it is black letter law that the inadequacy or uncertainty about the adequacy of a remedy justifies immediate relief. If there were a question that we had to present evidence on in this regard, it was clear error for the district court's sua sponte to enter judgment. And just to clarify, Your Honor, there never was a motion either under 12B1 or for summary judgment by the defendants. It was just our motion. The district court didn't agree with our motion and sua sponte entered judgment for the other side, rejecting or ignoring our request, our clear request in the summary judgment reply for the opportunity to present evidence. I finally wanted to address briefly counsel's mention that in U.S. West, it was uncertain whether or not the commission would adopt a true up, whereas here in this case, they said that they will adopt a true up. That is extremely important and supports our case because in U.S. West, U.S. West said it would be satisfied, quote, satisfied as long as the state commission adopted a true up. So its claim had two elements. Number one, the interim rates are unlawful. Number two, they haven't done a true up. And the court said, well, the state commission hasn't decided. Point two, they haven't decided whether to do a true up. So before evaluating your claim, we're going to wait and see whether or not they adopt a true up. Our case is totally different. We're saying, OK, they are going to do a true up. So what? That doesn't go to the essence of our claim. Our claim is even if they do do a true up, it is unlawful for them. They lack authority to put rates into effect now that violate federal law based simply on a promise that at some point in the future they're going to correct those errors through a true up procedure. So the uncertainty about whether there would be a true up in U.S. West went to why their claim was not fit, whereas it doesn't relate to our claim, which is quite different from the claim that was presented in U.S. West. I understand your claim. Your claim is even if we have a true up and it is the truest of true ups, it doesn't it isn't going to compensate you for the damages you claim from loss of customers and bankruptcy risk. Precisely. Thank you. Unless there are other questions. No further questions. Any thanks. All right. The matter stands submitted. Thank you very much, ladies and gentlemen. Court stands adjourned. Judge Jones. Yes. OK, I'm going to hang up now and I'm going to call you back from the conference room. All right. Can you give me five minutes? Sure. Thank you very much. Thank you. Thank you very much.
judges: Noonan, Callahan, Jones